03-16-00134-CR
03-16-00135-CR

FILED

November 21, 2016

Third Court of Appeals
Jeffrey D. Kyle
Clerk

# I. ISSUES That could Have Been PRESENTED

IN it's memorandum OPINION this court States that it agreed with Counsel wherein that the record Presented on arguably meritorious grounds for review and that the appeal was frivolous. APPellant contends that this was incorrect and that counsel's Motion to withdraw should have been denied. counsel could have arguably and with merit Presented the following Issues:

A. The sentence was grossly disproportionate To the offense.

1. APPellant lacked the mental culpability

2. Testimony's were INCONSISTENT

3. APPellant was Not the organizer



RECEIVED
NOV 2 1 2016
THIRD COURT OF APPEALS
JEFFREY D. KYLE

## II. ARGUMENT

### A. The sentence was grossly disproportionate to the offense

Generally, punishment assessed within the statutory limits is not excessive, cruel, or unusual punishment. Jordan v. State, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); Alvarez v. State, 63 S.W.3d 578, 580 (Tex. App.-Fort Worth 2001, No Pet.); Dale v. State, 170 S.W.3d 797, 799 (Tex. App.-fort worth 2005). But a narrow exception to the general rule that a sentence within the statutory limits is not excessive, cruel, or unusual is recognized when the sentence is grossly disproportionate to the offense. Alvarez, 63 S.W.3d at 580; See Moore v. State, 54 S.W.3d 529, 542 (Tex. App.-fort worth 2001, Pet. ref'd); See also Harmelin v. Michigan, 501 U.S. 957, 1004-05, 111 S.Ct. 2680, 2707, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring); Solem v. Helm, 463 U.S. 277, 290-92, 103 S.Ct. 3001, 3010-11, 77 L.Ed.2d 637 (1983); McGruder v. Puckett, 954 F.2d 313, 316 (5th cir.); cert. denied, 506 U.S. 849, 113 S.Ct. 146, 121 L.Ed.2d 98 (1992).

The Supreme Court has identified three criteria to be used to evaluate the

proportionality of a particular sentence. Alvarez, 63 S.W.3d at 580-81; See Solem, 463 U.S. at 292, 103 S.ct. at 3011. They are (1) the gravity of the offense and the harshness of the punishment, (2) the sen-tences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for the same offense in other ju-risdictions. Alvarez, 63 S.W.3d at 581. IN a proportionality analysis, the court must first make a threshold comparison of the gravity of the offense against the severity of the sen-tence. Id. The gravity of the offense must be judged in light of the harm caused or threatened to the victim or society and the culpability of the offender. Id. Only if the sentence is determined to be grossly disproportionate to the offense dose the court consider the remaining solem factors. Id.

Appellant presents three factors that will show this Honoroble court that the sentence should be determined to be grossly disproportionate to the offense.

__I. Appellant Lacked the mental culpability__

Culpability is defined by Black's Law Dictionary as, "moral blame worthiness, the quality of being culpable." Phyllis L. Crocker analyzes culpability in her article Concepts of Culpability and Death worthiness, 66 Fordham L. Rev. 21, 35-36 (1997), "At times the court seems to differentiate between the two [meanings] by casting the punishment-phase determination as one about the defendant's moral culpability, as opposed to his purely legal culpability at the guilt phase. In this respect, a defendant's moral culpability for murder may be greater or lesser, depending on aggravating and mitigating circumstances, even though his legal culpability remains the same."

In the case in hand, Appellant's Aunt, Irene Martinez ("Martinez"), testified on his Behalf, RR V6-42 to V6-70. During her testimony Ms. Martinez testified that Appellant ~~was~~ Is "bipolar and dyslexic", RR V6-43. Ms. Martinez further testified that Appellant is "Special ed. He doesn't Comprehend. He Cannot read or write Correctly. He's Slow, slow thinking", RR V6-43 ~~to~~ V6-44.

During her testimony Ms. Martinez was questioned as ~~too~~ whether she believed that Appellant Could be the brains behind or organize ~~~~ the robberies.

She further Testified that APPellant was more a follower and not a leader. that he was not capable to plain the robberies on his own, that somebody would have had to guide him. RR V6-49. though ms. martinez is Appellants Aunt, she had Appellant in her custody since he was nine. RR V6-42. Appellant contends that although ms. martinez testimony falls short of being evident of legal incompetence, it does show that Applicant lacked the mental or moral culpability to commit the aggravated robbery Proportional to the 40 year sentence.

2. testimony's were INconsistent

During the testimony of the two accomplice witnesses there were many different inconsistencies which contributed to the grossly disproportionate sentence.

The trial court's failure to consider these inconsistencies harmed Appellant. During kalei manibusan's, ("manibusan"), testimony she testified that she believed that Appellant had said, "Pull in that store. Let's rob it." RR V7-16. Yet, the testimony of trevonne Harris, ("Harris"), reveals that Mr. Harris and the others involved in the robberies collectively Planned them. RR V6-115,116.

Later in her testimony. Ms. manibusan was asked who would say, "pull into Eagle mart. "She replied, "Trevonne [Harris]. RR V7-36. Ms. manibusan further contradicts her previous statement when she testifies that her and Appellant took no part in picking out the stores or the robberies. RR V7-36 to V7-39.

Mr. Harris and Ms. manibusan's testimonies differ wherein Mr. Harris claims the robberies were committed to "get money in our pocket," V6-116, while Ms. manibusan testifies that it was "to pay [Appellant's] court costs," V6-150.

For the above stated inconsistencies Appellant contends that the 40 year sentence he recieved was grossly disproportionate to the offense, because the inconsistent statements reveal that the Appellant was less invowed in the offense than portrayed, as revealed in Mr. Harris testimony, Mr. Harris testifies that Appellant and Ms. manibusan role was to "watch out." RR V6-116

## 3. APPELLANT was not the organizer

APPellant contends that the record reveals that he did not organize the robberies and thus the 40 year sentence he recieved was disproportionate to the offense.

When asked "who started talking about doing robberies," Mr. Harris testified that it was "Me. Me, I thought about it and People who were in [the] robbery. RR V6-115. Mr. Harris continues by explaining his role in the robberies, he states, "to go in and get the money according to Villalobos and just watch out the door," RR V6-116. Mr. Harris testifies that Appellant told no one what to do or not to do, RR V6-123. The robberies even continued after Appellant was arrested. RR V6-127. through out all the robberies Mr. Harris testifies of 12 total robberies, only 4 of which the Appellant rode along for. RR V6-131 to V6-132.

As previously discussed Ms. Martinez, whom raised Appellant since he was nine, testified that Appellant was more

of a follower and not a leader and that he was not capable to plan the robberies on his own, that somebody would have had to guide him. RR V6-49. this is supported by mr. Harris' testimony that it was according to Villalobus that he was "to go in and get the money", RR V6-116.

IN Part one of the solem test Salem V. Helm 463 U.S. 277, 284, 103 S.ct. 3001, 3006, 77 L.Ed.2d 637 (1983) (reeognizing that "[T] he final clause [of the Eighth Amendment] prohibits not only barbaric punishements, but also sentences that are disproportionate to the crime committed"), the harsness of the punishment is viewed in light of the gravity of the offense. Threshold comparison of the offense against the severity of the sentence, judging the gravity of the offense in light of the harm caused or threatened to the victim or society, and the culpability of the offender. Culton V State 95 S.W.3d 401, 403 (Tex. App. - Houston [1st Dist.] 2002).

Appellant believes that he has fulfilled Part one of the solem test and will thus move on to Part two. IN Part two the appellant must

show sentences imposed on other criminals in the same Jurisdiction. Appellant first cites Burton v. State, 2015 Tex. App. Lexis 8594 (Tex. App.-Austin 2015) (Not Designated for Publication), in which the Defendant recieved a 40 year Sentence. In Burton, the defendant during an aggravated robbery attached the Store clerk and stabbed her multiple times.

Appellant next cites Reese v. State, 2016 Tex. App. Lexis 1871 (Tex. App-Austin 2016) (Not Designated for Pubication) in which the Defendant recieved a 35 year Sentence. In Reese, during an aggravated robbery, Reese fired a total of four shots at the victims vehicle. Having addressed the Second Point of the Selem test, Appellant will move on to the third Point.

In the third Point of the Solem test the Sentence is examined in Comparison to the Sentences imposed on other criminals for the Same crime in other Jurisdictions.

Appellant cites 4 cases to Support his claim, Gordon v. State, 191 S.W.3d 721 (Tex. App.-Houston [14th Dist] 2006);

Williams v. State, 196 S.W.3d 365 (Tex. App. Houston [1st Dist] 2006); McCrury v. State, 327 S.W.3d 165 (Tex. App.-Texarkana 2010); and Medina v. State, 367 S.W.3d 470 (Tex. App.-Texarkana 2012). In Gordon, supra, Gordon and two other men robbed a man for his jewelry, his car, and $800 to $1,400 cash, all the while having a gun at his head. When asked to identify a suspect, the victim did not hesitate to identify Gordon as the one who placed the gun to his head. Gordon was sentenced to 18 years confinement. In Williams, supra, Williams was convicted after him and another man brandished their hand guns, and drove off in the victims friends vehicle. Williams was sentenced to 25 years confinement. In McCrary, supra, McCrary and two other people planned to hit an 81 year old man on the head and steal the money he was known to carry. But when the robbery attempt was made, it failed and McCrary was tried and convicted for his role in the botched attempt. McCrary was sentence to 25 year confinement.

In Medina, supra, the victim pursued medina after catching medina in the victims car. Medina had the radio from the victims car. After about 20 feet medina turned and stabbed the victim with a screwdriver. medina was sentenced to 18½ years

confinement after one enhancement Paragraph was assessed.

Appellant believes that he has fulfilled the third and final Part of the Solem test. Having fulfilled all three Parts of the Solem test he believes that this reveals that the sentence is disproportionate to the offense.

## Prayer

Wherefore, PREMISES CONSIOERED, Appellant Prays that this Honorable Court of Appeals reverse and remand this cause for a new Sentencing hearing. Appellant also requests this Court grant him any other relief in which he is entitled

Respectfully submitted,

*Darren Gardner*

Darren Gardner, Prose
TDCJ#: 2047849
Tulia Unit
4000 Hwy 86 West
Tulia, Texas 79088

## CERTIFICATE of Service

I hereby certify that on November 15, 2016, a true and correct copy of Appellant's motion for Rehearing was mailed to the attorney for the state by U.S. first class mail addressed to Henry.L. Garza at Justice complex, 1201 Huey Rd., Ste. 2100, Belton, Texas 76513.

I, Darren Gardner, TDCJ #: 2047849, being presently incarcerated in the tulia unit in, swisher county, Texas, verify and declare under Penalty of Perjury that the foregoing statements are true and correct. Executed on this the 15th day of November, 2016

Darren Gardner, Pro se
TDCJ#: 2047849

SPECIAL MAIL

Warren Gavanes 2047849
Tulia Unit
4000 Hwy 86 West
Tulia, TX. 79088

Jeffrey D. Kyle, Clerk
Court of Appeals
Third District
P.O. Box 12547
Austin, TX 78711

AMARILLO TX
791
NOV 15
2016
79120

USA FOREVER

USA FOREVER